## COWAN AND WIFE *vs.* JONES.

[BILL IN EQUITY BY DISTRIBUTEES IMPEACHING FINAL SETTLEMENT OF ADMINISTRATOR'S ACCOUNTS ON THE GROUND OF FRAUD.]

1. *Final settlement, when attacked for fraud, not opened on proof of errors or mistakes.* A decree of the Orphans' Court, rendered on the final settlement of an administrator's accounts, previous to the act of 1850, conferring jurisdiction on chancery to overhaul such decrees, will not be opened in equity, when impeached for fraud, on proof of an error or mistake in the allowance of a

Cowan and Wife v. Jones.

credit for money paid to a guardian after the revocation of his letters of guardianship; it being shown that the complainant, then an infant, was represented on the settlement by a guardian *ad litem;* that the payment was made in good faith, for the ward's accommodation, and in accordance with her wishes at the time; and it not appearing that the facts were concealed from the court.

2. *Distinction between opening an account and surcharging and falsifying it.*—When an account is opened on the ground of fraud, the whole of it may be unraveled; but where permission is merely given to surcharge and falsify, the account stands as *prima facie* correct, and the *onus* of proving mistakes is on the party alleging them; and therefore, where a bill is filed to impeach a decree on the ground of fraud, if the answer denies all fraud, but admits an error or mistake, the complainant cannot have a decree unless he amends his bill.

3. *Amount too small to uphold jurisdiction of equity.*—The defendant in this case admitted in his answer that a balance of $8 42 was due from him to complainants, but the bill was not sustained as to any of the other matters in controversy: *Held,* that this sum, of itself, was too small to justify a resort to equity, or to uphold its jurisdiction.

4. *Dismissal of bill without prejudice—Laches in failing to amend.*—The dismissal of a bill which seeks to impeach a decree on the ground of fraud, though no reservation be made of complainant's right to file another for the purpose of surcharging and falsifying the account on the defendant's admission of mistakes, does not prejudice that right; but if the practice were otherwise, the complainant's laches in failing to amend his bill would be a good ground for refusing to modify the decree on error, so as to dismiss the bill without prejudice.

APPEAL from the Chancery Court at Mobile.

Heard before the Hon. WADE KEYES.

THIS bill was filed by the appellants against William G. Jones, as the administrator of Edward O. Branch, deceased, who was the father of Mrs. Cowan. Its material allegations, in substance, were as follows: That the defendant became the administrator of said decedent, by regular appointment from the Orphans' Court of Greene county, in October, 1838, and took possession of all the assets of his estate; that he settled up the estate in 1843, and paid off to all the distributees except Mrs. Cowan their distributive shares of the estate, which, according to the settlement made by him, was about $1,000 over and above the property given to them; that said distributive share was, in fact, at least $2,000, and a decree ought to have been rendered for that amount; that one Thomas P. Giles, who had married a daughter of said Branch, was appointed guardian of Mrs. Cowan, who was then an

infant about ten or twelve years of age, in Virginia, but his letters of guardianship were revoked on the — day of ——, 1843; that the said Giles and defendant, contriving and fraudulently intending to injure complainant, and to have the benefit of her property, afterwards made a pretended settlement of said estate, and of complainant's interest in the same, and said Giles received from said defendant, as administrator as aforesaid, complainant's distributive share of said estate, and gave his receipt for the same, which the said Jones filed as one of his vouchers on said settlement, and the same was allowed by the court. "And complainants expressly charge, that at the time said settlement was made said Giles was not the guardian of said complainant, and that this was known to said Jones at the time; that said settlement was collusive, fraudulent, and grossly unjust, and that said Giles had no authority to make any settlement for complainant, or to receive any property belonging to her; that these facts were well known to said administrator at the time said settlement was made, and said court was deceived and imposed upon when it sanctioned said settlement; that said settlement was made without the knowledge or consent of complainant, and while she was a minor." The prayer of the bill is, that said pretended settlement with the Orphans' Court may be set aside and held for nought; that said administrator may be decreed to settle up said estate and pay over complainant's distributive share; and for general relief.

The defendant answered the bill, alleging, that on the 6th June, 1843, he filed his accounts and vouchers, in the Orphans' Court of Greene, for a final settlement of his administration on said estate; that Mrs. Cowan was made a party to this settlement by the appointment of a guardian *ad litem* for her; that notice of this intended settlement was duly given by publication, and the account was finally settled on the 9th November, 1843, and a final decree then rendered; "that before the rendition of this decree, but after the filing of his accounts and vouchers, respondent went to Virginia, where said Giles and his family (including his said ward) then resided, and took with him a copy of his account and the amount of money then due said ward as her distributive share, for the purpose of paying it; that the account was submitted to the said

Giles, as guardian, and he made no objection to it; that said Giles informed respondent at this time that he contemplated removing with his family to Missouri, and that his said ward wished to accompany them; that respondent afterwards heard that the sureties of said Giles, on his bond as guardian, in consequence of his intended removal, had required him to give counter security, and subsequently that his letters had been revoked on account of his failure to give such security; that said Giles represented to respondent that his ward was indebted to him on account of her support and maintenance, that she was anxious to accompany him and his family to Missouri, and that she could not do so without the money which respondent had carried to Virginia for the purpose of paying her; that respondent, being anxious to do nothing which could have even the semblance of a wish on his part to keep in his hands any money belonging to complainant, or to put her to any trouble or inconvenience, and at the same time not being willing to incur any risk in paying said money, did pay over said money (being $750) to said Giles, on his executing an indemnifying bond with approved security, and took the receipt of said Giles for said money," &c.

The answer denies all fraud and collusion, and states that this payment was made, as respondent believed, in accordance with the wishes of complainant at that time, and for her accommodation; admits that, on his final settlement of said estate, which took place after said payment was made, the sum of $8 42 appeared to be due from respondent, as administrator, to said complainant, as one of the distributees of said estate, for which a decree was rendered against him, and which he has always been ready to pay, though he has never tendered the money; admits, also, that in the stating of said account for final settlement, he accidentally omitted to charge himself with the sum of $200, for so much money collected by him, and that complainant is entitled to one-seventh part of this sum; pleads in bar of this suit, except as to the two above-named items of $200 and $8 42, the decree of said Orphans' Court and the statute of limitations; and demurs to the bill for want of equity, as also for vagueness and uncertainty in its allegations.

The cause was submitted on bill and answer only, and the

chancellor rendered a decree dismissing the bill ; from which decree the complainants prosecute this appeal, and here assign the same for error.

DANIEL CHANDLER, for the appellants :

1. The account for final settlement was filed on the 6th June, 1843, was appointed to be heard on the 16th October, and was continued until the 9th November, 1843. After filing the account, Jones went to Virginia, taking $750 with him with the intention of paying it over to complainant's guardian, for her benefit; but before the payment was made, Giles's letters were revoked. Jones, knowing this, nevertheless paid to him the $750, taking his receipt and a bond of indemnity with good security ; and after this he returns to this State, and settles up the estate on the 9th November, 1843. On this settlement, the amount in the hands of the administrator was $8,605 40, and each distributee's share was $1,229 34. In its decree the court says,—"Sarah Branch" (complainant) "having received $470 92, as rendered in account, and since filing the account has received, by her guardian, Thos. P. Giles, the further sum of $750, per receipt filed ; leaving in her favor a balance of $8 42", for which judgment is then rendered. The court evidently supposed, when it allowed this payment of $750, that it had been paid to the guardian. Mr. Jones presented the guardian's receipt ; and having no reason to suppose that his letters had been revoked, the court allowed the payment, and passed the account. It was the duty of the administrator to have informed the court of the circumstances under which the money was paid—that it was paid after the revocation of Giles's letters, and when the ward, being only fifteen years of age, was incapable of acting for herself. Of the neglect of this duty the complainant finds fault, and for this reason she charges that " the court was imposed upon and deceived when it passed the account, and that the settlement was unjust and fraudulent." Before Mr. Jones can claim protection under that decree, he must show that the settlement was fair and legal, and that the court, with full knowledge of the facts, approved his act. But when he admits that he paid the money to Giles after he knew his authority to receive it had been revoked, that he took his

21

receipt as guardian when he knew he was no longer guardian, and that he presented that receipt to the court without any explanation of that fact,—such a settlement ought to derive no support from the fact that the court, in ignorance of these circumstances, passed the account, and sanctioned the payment. No one can believe that the court, had these facts been known, would have sanctioned the payment to an insolvent man after the revocation of his letters. Courts are the guardians and protectors of minors and their property. The decree is not conclusive on this court: it can be opened and impeached, and, if fraudulently obtained, will be set aside.— 2 Story's Equity, § 1522; Cooper's Equity, 266; Mitford's Pleading, 93; 4 Johns. Ch. 199; Taylor v. Benham, 5 How, (U. S.) R. 233.

2. The defence that this $750 was paid to Giles for the benefit of Mrs. Cowan, and with her knowledge and concurrence, is not available. The evidence shows that Giles got the benefit of it—that it was used by him to remove himself and family to Missouri. Moreover, being under age, her conduct, while under the control and influence of her guardian, amounts to nothing. The evidence shows that she was informed she could not go with her sister to Missouri, unless this money was paid over. This threat was a kind of moral coercion, and the consent thus given cannot deprive her of her rights; in truth, she was incapable of giving a binding consent, or of assuming the responsibility of such an act. All such arrangements to the prejudice of a minor are received with great suspicion.—1 Story's Equity, §§ 240, 322; 9 Ves. 297; 1 ib. 220; 14 ib. 299; 5 Ala. 94.

3. The decree should be in favor of complainant, exclusive of the $750, for the $8 42 balance on the decree, which the defendant admits is in his hands, and for one-seventh of the $200, which he states was omitted from his account. The first item, though small, is not so small as to come within the influence of the principle, '*De minimis non curat lex.*'—32 Maine R. 119. The item of $200 was omitted from the settlement, and the complainant knew nothing of it until the filing of the defendant's answer, in which the omission was admitted.

Cowan and Wife v. Jones.

HOPKINS & JONES, *contra*, made the following points :—

1. The bill shows that there had been a final settlement of the administrator's accounts in the Orphans' Court of Greene county. This was known to complainants ; and the account, being of record, was accessible to them. It was at least *prima facie* correct, and could only be impeached by bill to surcharge or falsify the account. Such a bill must state the particular items alleged to be omitted or false ; and if it does not, it is demurrable. This bill does no such thing, and is therefore bad on demurrer.—7 Johns. Ch. R. 69–77; 2 Edw. Ch. R. 293; 1 Ired. Ch. R. 403.

2. The case made by the bill is denied by the answer, and no proof was taken to sustain it. Even if the answer admitted a good case for complainants, it is wholly different from that stated in their bill, and therefore cannot avail them. If they had wished to avail themselves of it, they should have amended their bill ; otherwise they cannot have a decree.— Story's Equity Pleadings, §§ 257, 264 ; Gresley's Eq. Evidence, 22–3 ; 1 Daniel's Ch. Pr. 377, note ; 4 Port. 307 ; 1 Ala. 330 ; 13 *ib.* 593, 695 ; 19 *ib.* 398 ; 20 *ib.* 768 ; 3 Peters, 207; 11 *ib.* 249; 2 How. (U. S.) R. 338–43.

3. The Orphans' Court of Greene, in which the administrator's accounts were regularly and finally settled, unquestionably had jurisdiction of the matter. The complainant Sarah was regularly made a party to that settlement, by due notice and the appointment of a guardian *ad litem*. That she was a minor, makes no difference : being represented by guardian *ad litem*, she is as much bound by the decree as if she had been an adult.—1 Daniel's Ch. Pr. 205; 7 Missouri R. 426 ; 4 Dana, 429. The decree is binding and conclusive on her, and cannot be collaterally impeached ; it can only be impeached for fraud, or by a bill properly framed to surcharge and falsify the account.—Clay's Digest, p. 309, § 37; 2 Stew. 214 ; 16 Ala. 271; 17 *ib.* 717; 18 *ib.* 713.

CHILTON, C. J.—The complainants concede by their bill that a final settlement has been made by the appellee of the estate of his intestate, and it follows that, if such settlement is to stand, it is an end of this controversy. They charge, however, that this settlement was fraudulent—that

the Orphans' Court was deceived by the appellee, who claimed and obtained credit for alleged payments to one Giles, as guardian of Mrs. Cowan, when in fact he was not the guardian, but had, to the knowledge of appellee, been removed.

No proof has been taken to establish any fraud in obtaining the decree made upon the final settlement of the estate of Branch, and it is very clear that no imputation of fraud can be deduced legitimately from the record in the cause. The charges of fraud and collusion between the administrator and Giles, the alleged guardian, in respect of the payments made to the latter, wholly fall to the ground, and the answer of the defendant expressly denies all fraud or concealment in making the settlement in the Orphans' Court. For aught that we can know, the Orphans' Court of Greene county was fully apprised of all the circumstances attending the payment ; and, although its action may have been erroneous, this furnishes no ground for impeaching the decree in chancery ; the settlement having been made before the act of the legislature conferring upon the Chancery Court power to overhaul decrees rendered by the Probate Courts. The mere fact that the $750 were paid to Giles after the letters of guardianship to him had been revoked, it appearing that it was paid in good faith, and for the ward's accommodation, and in accordance with her wishes at the time, is not sufficient to open a decree which allows it, the circumstances of the payment not being concealed from the court.

The complainant was duly represented by guardian *ad litem* upon the final settlement ; and if any error intervened in allowing the payment of the $750, this should have been presented by a bill of exceptions, and does not render the settlement void.

It is insisted, however, that the appellee admits a mistake has intervened, in the settlement which was made with the Orphans' Court, of $200 ; one-seventh of which sum, it is alleged, belongs to the complainants. As it respects this sum, we think that, upon well-settled principles of equity, no decree can be rendered for it upon the present bill. The answer admits, that through mistake, two hundred dollars were omitted out of the final settlement. To that extent, the account then had, as confirmed by the decree, was erroneous.

No attempt was made to amend the bill; but the complainants continue to urge the ground first assumed by them, that by reason of fraud the whole decree should be opened.

The rule is settled, that where errors or mistakes only are shown to exist in the account, the account will not be opened, as will be done where fraud is shown, but the party alleging the error or mistake in the account will be permitted to surcharge and falsify it.—Danl. Ch. Pr. p. 764; Story's Eq. Jurisp. § 523; 1 John. Ch. R. 550; Vernon v. Vawdry, 2 Atk. R. 119. The distinction between opening an account, and surcharging and falsifying it, is important; because, when opened, the whole of it may be unraveled; but when permission is given merely to surcharge and falsify, the onus is upon the party who alleges mistakes to prove them. The account, *prima facie*, stands as correct; and if the party can show an omission for which he should have a credit, it is added (surcharged); or, if a wrong charge has been made against him, it is deducted, which is called a falsification. As the bill before us does not contain any allegation of mistake or errors as the basis for an order to surcharge and falsify the admission in the answer that a mistake exists cannot entitle the complainants to a decree. The decree must be made upon the allegations of the bill—upon *the case made by the bill*, and the title to relief therein asserted must be substantially shown. The court pronounces its decision, it is said, *secundum allegata et probata* (Story's Eq. Pl. § 500), so that no relief can be granted for matters not charged, although they may appear in other parts of the pleadings and in evidence.—See 1 Danl. Ch. Pr. pp. 377–378, note 2, and cases there cited; also, McKinley v. Irvine, 13 Ala. R. 593, 695 *et seq.*; Evans v. Battle, 19 *ib.* 398; Paulding v. Lee & Ivey, 20 *ib.* 753–758.

It follows, that as there is no fraud as alleged, and the bill is not framed to surcharge or falsify the account as settled by the decree of the Orphans' Court of Greene county, the complainants are barred by the decree, which is valid and conclusive until it is impeached in some of the modes pointed out by law; and they cannot, therefore, have a decree for the two hundred dollar item set forth in the answer. The decree is final until opened, or leave obtained in some way to

overhaul items which are, or should have been, embraced in it.—Cole v. Connelly, 16 Ala. R. 271; Cox v. Davis, 17 *ib.* 714–717; Sankey's Distributees v. Sankey's Ex'rs, 18 *ib.* 713.

As to the pittance due upon the final settlement, it is too insignificant to justify a resort to equity; or to uphold its jurisdiction; and it is not attempted by the appellants' counsel to sustain it solely for that sum.

It would, perhaps, have been well for the chancellor to have dismissed the bill without prejudice to filing another to recover for the share due the complainants of the $200; but we think their right is not foreclosed by the present bill, which makes a different case from a bill which would seek the attainment of that object. If, however, their right to a new bill would be prejudiced, we should not reverse for this reason, since they had ample opportunity to amend their original bill, making it one with a double aspect, so as to embrace the correction of this mistake, and they failed to do so. Their laches would be a good ground for refusing such modification.—Rumbly v. Stainton and Wife, 24 Ala. R. 712.

Let the decree be affirmed.