This appeal concerns the right of an oil and gas lessee to challenge the validity of his lessor's title and is a case of first impression before this court. Cross and others (plaintiffs) ask our review of the propriety of the action of the Circuit Court for Mobile County which granted a motion by appellee Union Oil Company of California (Union Oil Company) for summary judgment. Four counts of plaintiffs' amended complaint pertaining to Union Oil Company were dismissed Plaintiffs brought this action against Lowrey and others seeking declaratory relief regarding the disputed ownership of certain mineral interests located in Mobile County. Union Oil Company was named as a defendant because it is the lessee of the mineral interests in dispute
The dispositive issue on this appeal is whether landlord and tenant law, which prevents a tenant from disputing or challenging his landlord's title to the leased premises, applies to an oil and gas lease. We hold that it does not, and we affirm the judgment of the trial court
There are two rival chains of title to the disputed mineral interests. Plaintiffs derive their title under what may be called the "Hackmeyer" chain. Defendants Lowery and others claim title under the "Eastland" chain. Union Oil Company secured leases from both sets of claimants, or their predecessors in interest. In November 1976, Union Oil Company advised both sets of claimants that due to the uncertainty of title to the disputed mineral interests, it was suspending all royalty payments attributable to the ownership interests in dispute. Plaintiffs commenced the instant action on July 29, 1977. Another action (to which plaintiffs were not parties) involving the same disputed claims of title, but different mineral properties, was commenced prior to this action. The earlier action involved the same defendants, including Union Oil Company, who supported the claim of those claiming under the "Eastland" chain. That case ultimately came before this court in Trauner v. Lowrey, 369 So.2d 531 (Ala. 1979). In that case this court held the "Hackmeyer" chain to be the valid chain of title
In the instant case, Union Oil Company in its answer asked that the circuit court declare that plaintiffs had no right, title, or interest in the disputed mineral interests Plaintiffs then amended their complaint, alleging that by its action, Union Oil Company "disavowed the tenancy, asserted a hostile claim of ownership in itself and in others and has otherwise affirmatively sought to defeat the title and interest of the plaintiff-lessors." Plaintiffs equated Union Oil Company's action with a repudiation of the lease and sought a judgment from the trial court declaring the lease void at their option
Under landlord and tenant law, plaintiffs argue, a repudiation or disavowal of the lease by the tenant effects a forfeiture of the lease at the lessor's option. Martin vCarroll, 259 Ala. 197, 66 So.2d 69 (1953), is cited as authority for this principle of law. Plaintiffs argue also that defendants are estopped from denying their lessor's title and cite Code 1975, § 35-9-1, which provides that a "tenant cannot dispute his landlord's title, nor attorn to another claimant while in possession, except in cases provided otherwise in this Code." In essence, plaintiffs theorize that Union Oil Company's actions in disputing the validity of plaintiffs' title and, in effect, championing the rival chain of title, allow plaintiffs to elect that Union Oil Company has forfeited its lease with them. In our opinion, the better precedent from other jurisdictions rejects the application of landlord and tenant law to oil and gas leases
The Arkansas Supreme Court in Arkansas Louisiana Gas Companyv. Evans, 232 Ark. 495, 338 S.W.2d 666 (1960), rejected the application of the doctrine of estoppel in landlord and tenant law to an oil and gas lease and held that a lessee could deny the lessor's title. In Evans, it was held that a *Page 647 
mineral lessee more closely held the position of a purchaser than that of an occupier of the land. The Evans court noted that the principle of landlord and tenant law that prevents a lessee from questioning his lessor's title is a means of preventing a lessee from defeating his lessor's right to collect rent. Evans, at 338 S.W.2d 669. That rationale has been noted by this court as well. Davis v. Williams, 130 Ala. 530,30 So. 488 (1901). Distinguishing between a tenant who occupies land, and a mineral lessee, the Arkansas Supreme Court observed:
 There are compelling reasons for recognizing a distinction between the two situations. In the usual case a tenant of business property or farm land is not concerned with any question of title. All he pays for is the right of possession, and if his occupancy is undisturbed he has no ground for complaint. To permit him to question his landlord's title would prevent the latter from bringing an action to collect the rent except at the risk of placing his title in jeopardy. See Tiffany, Real Property (3d Ed.), § 135
Evans, at 338 S.W.2d 669. This court has recognized the inapplicability of certain landlord and tenant law principles to the somewhat analogous subject of mining leases. Adams vRiddle, 233 Ala. 96, 170 So. 343 (1936)
The facts in this case are further similar to those considered in Evans because of the presence of a reduction clause in the lease. The lease in the instant case contained the following reduction clause:
 Lessor hereby warrants and agrees to defend title to said lease against the claims of all persons whomsoever. . . . Lessee is hereby given the right to acquire for its own benefit, deeds, leases, or assignments covering any interest or claim in said land which lessee or any other party contends is outstanding and not covered hereby and even though such outstanding interest or claim be invalid or adverse to lessor. If this lease covers a less interest in the oil, gas, sulfur, or other minerals in all or any part of said land than the entire and undivided fee simple estate (whether lessor's interest is herein specified or not), or no interest therein, then the royalties, and other moneys accruing from any part as to which this lease covers less than such full interest, shall be paid only in the proportion which the interest therein, if any, covered by this lease, bears to the whole and undivided fee simple estate therein
The Arkansas Supreme Court in Evans recognized that by inserting a reduction clause in the lease, "the parties . . recognize[d] the lessee's right to question the lessor's title, and thus they eliminate[d] by contract any possibility of estoppel." Evans, at 338 S.W.2d 669; Annot., 87 A.L.R.2d 602 at 607 (1963); Fleck, Selected Leasing Problems — ProtectionLeases, Life Estate and Remainder Interest, Interest in aParticular Stratum, 15 Rocky Mountain Mineral Law Institute 217 (1969). See: Shell Oil Co. v. Howth, 138 Tex. 357,159 S.W.2d 483 (1942)
Plaintiffs attempt to distinguish Evans from the present case on the basis that in Evans the lessor's title was patently defective. We reject such a distinction. It is clear from the reasoning in Evans that the Arkansas Supreme Court based its decision on the inapplicability of estoppel principles of landlord and tenant law to oil and gas leases, and not upon the invalidity of the lessor's title. Plaintiffs similarly argue that the Evans consideration of the effect of a reduction clause was merely dicta, and that the Arkansas Supreme Court looked to the particular circumstances of that case in reaching its decision. Plaintiffs' contention is without merit. Our quotation, supra, from Evans clearly negates plaintiff's contention. "The reduction clause in the lease . . eliminate[d] by contract any possibility of estoppel." Evans, at 338 S.W.2d 669. The Arkansas Supreme Court thus found a second and independent basis to deny the application of landlord and tenant law principles to the issues raised inEvans. Next, plaintiffs maintain that the language of the reduction clause in the instant case does not authorize Union Oil Company to champion a competing chain of title. Having decided *Page 648 
that the principles of landlord and tenant law which plaintiffs urge us to apply to the present case are inapplicable, we see no reason that prevents Union Oil Company from supporting those claiming under the competing chain of title
Lastly, we consider plaintiffs' contention that a landlord-tenant relationship is implied by the language employed in the lease. The lease, plaintiffs point out, contains the following language:
 It being the expressed intention of the lessors herein to grant, lease and let unto the lessee herein, and by these presents said lessors, their heirs, successors and assigns, do hereby grant, lease and let unto said lessee, its successors and assigns, all of their right, title and interest in and to all lands and minerals. . . . [Emphasis added in plaintiffs' brief.]
Sun Oil Co. v. Oswell, 258 Ala. 326, 62 So.2d 783 (1953), andWilliams v. Kitchens, 261 Ala. 340, 74 So.2d 457 (1954), are cited by plaintiffs as supporting their contention. We disagree with plaintiffs' interpretation of these cases. We find no language in either case to support the application of the principles of landlord and tenant law that plaintiffs espouse to oil and gas leases. Additionally, in Moorer v. BethlehemBaptist Church, 272 Ala. 259, 264, 130 So.2d 367, 371 (1961), this court observed: "Gas and oil leases and contracts are a part [sic] by themselves. There is scarcely any comparison between them and the ordinary farm or house lease, although there is some resemblance in them to coal or solid mineral leases." [Citation omitted.] We decline to accept plaintiffs' contention that the language in the lease referring to "lease and let" transforms the relationship of the parties into that of landlord and tenant as plaintiffs contend
Our holding on the above-discussed issues allows us to pretermit discussion of the additional issues raised by the parties. The judgment of the trial court is affirmed
AFFIRMED
FAULKNER, JONES, ALMON and EMBRY, JJ., concur